# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re                                                   Case No. 16-30141-WRS
                                                        Chapter 7
JOHN SCOTT HOOPER
SUZETTE P. HOOPER,

      Debtors

## MEMORANDUM DECISION

This Chapter 7 bankruptcy case is before the Court on the joint motion to approve compromise filed by Chapter 7 Trustee Susan DePaola ("DePaola") and Transamerica Advisors Life Insurance Company ("Transamerica"). (Doc. 86). The compromise would resolve a pending motion for relief from the automatic stay filed by Transamerica that DePaola has objected to. (Docs. 24 & 49). Acting *sua sponte*, the Court entered an order in which it expressed concern that the compromise should not be approved on the ground that Transamerica does not have a secured claim and is not entitled to relief. (Doc. 92). The Court scheduled a hearing on July 25, 2016, at which DePaola was present in person and through counsel Joy Beth Smith, Transamerica was present through counsel Charles Stewart, Debtors John Scott and Suzette Hooper (collectively, "the Debtors") were present through counsel John Norris, and the personal representatives of the probate estates at issue were present through counsel John Peek. For the reasons set forth below, the joint motion to approve compromise is DENIED.

## I. FACTS & PROCEDURAL HISTORY

The following facts are taken from the parties' filings, the exhibits they have attached, and (to the extent necessary) complaints filed in adversary proceedings arising out of this case.

The facts recited here are assumed to be true only for the purpose of deciding the motion to approve compromise and are not intended to have preclusive effect on any other proceedings.

### A. The Insurance Policies

In 1987 Mallett Scott Hooper ("Mallett") purchased two life insurance policies from Transamerica[1] on his life and the life of his wife, Allene Alexander Hooper ("Allene"). (Doc. 24). Mallett and Allene were the parents of Emily Hooper Brown ("Emily"), Christi Hooper ("Christi"), and Debtor John Scott Hooper (individually, "John Scott"). (Doc. 24). Pursuant to a 2003 agreement between Mallett, Allene, and their children, the proceeds from the life insurance policies were to be divided equally among Emily, Christi, and John Scott upon the deaths of Mallett and Allene. (Doc. 85, ¶ 16).

Mallett died in 2006 and Allene died in 2008. (Doc. 24). Emily and Christi were named as the personal representatives of Mallett's probate estate and John Scott was named as the personal representative of Allene's probate estate. (Doc. 85, ¶ 16). In July 2010, John Scott – who was then a licensed attorney in Montgomery, Alabama – submitted claim forms to Transamerica asserting that he was the personal representative of both estates. (Doc. 24). Transamerica apparently determined that John Scott's representation was false, and that Emily and Christi were the actual representatives of Mallett's estate. (Doc. 24). Nevertheless, Transamerica mistakenly mailed the death benefit check of approximately $84,000, payable to the "Estate of Mallett S. Hooper," to John Scott's law office. (Doc. 24). John Scott then

---

[1] At the time, Transamerica was known as Merrill Lynch Family Life Insurance Company. (Doc. 24). For the sake of clarity the Court will refer to this entity as "Transamerica" throughout this opinion.

endorsed the check, negotiated it, and deposited the insurance proceeds into his law firm's account. (Doc. 24). The money has disappeared.

## B. The State Court Litigation

Emily and Christi, acting as the personal representatives of Mallet's probate estate, sued Transamerica, John Scott, and his law firm in the Circuit Court of Covington County, Alabama ("the Circuit Court") in February 2014 to recover the insurance benefits. (Doc. 24). Transamerica settled with Emily and Christi for $140,000 and filed a cross-claim against John Scott and his law firm for reimbursement. (Doc. 24, Ex. A). John Scott failed to respond to Transamerica's discovery, so on Transamerica's motion the Circuit Court entered default judgment against him on May 20, 2015 as to liability, with damages to be determined. (Doc. 24, Ex. C). On September 23, 2015, the Circuit Court entered a damages award of $210,000 in favor of Transamerica and against John Scott, consisting of $140,000 in compensatory damages and $70,000 in attorneys' fees. (Doc. 24, Ex. D). Transamerica properly recorded this judgment on October 19, 2015. (Doc. 24, Ex. D; Doc. 56).

Meanwhile, Transamerica had filed claims in the probate estates of both Mallett and Allene, and the Circuit Court had removed the probate cases from the probate court and stayed distribution of assets in the estates. (Doc. 24, Ex. B). On September 30, 2015, the Circuit Court ordered the personal representative in Allene's probate case[2] that any distribution due John Scott

---

[2] Apparently, John Scott was at some point removed as the personal representative of Allene's probate estate and was replaced with Dennis Meek, the Sheriff of Covington County. (Doc. 86). Mr. Peek explained at the July 25 hearing that this necessity was why the estates had remained in probate for six years.

from her estate should be applied to Transamerica's judgment. (Doc. 24, Ex. E). Transamerica moved for a similar order in Mallett's probate case, but the Circuit Court has not issued one. (Doc. 24).

### C. The Bankruptcy Proceedings

The Debtors filed Chapter 13 bankruptcy on January 18, 2016,[3] but converted to Chapter 7 on April 1 after Transamerica and the Chapter 13 trustee objected to their plan. (Docs. 1 & 29). Transamerica had moved for relief from the automatic stay in March to recover the distributions due John Scott in Mallett's and Allene's probate estates. (Docs. 21 & 24). Transamerica asserts that it is entitled to relief on three grounds: (1) this Court lacks jurisdiction over the distributions under the probate exception to federal jurisdiction, (2) the distributions are not property of the Debtors' bankruptcy estate because of Transamerica's judgment lien, and (3) Transamerica lacks adequate protection. (Doc. 24). Alternatively, Transamerica asks the Court to order the trustee (now DePaola) to abandon the distributions as burdensome or of inconsequential value to the estate. (Doc. 24).

After the Debtors converted to Chapter 7, new trustee DePaola objected to Transamerica's motion for relief. (Doc. 49). She asserts that the probate exception to jurisdiction is inapplicable, that the distributions are property of the estate because Transamerica's judgment lien does not attach to them, that as an unsecured creditor

---

[3] This actually the Debtors' second Chapter 13 bankruptcy in a span of two months. Their first case, filed November 18, 2015, (Case No. 15-33267), was dismissed on the Bankruptcy Administrator's motion due to the Debtors' failure to obtain credit counseling prior to filing bankruptcy. *See* 11 U.S.C. § 109(h)(1). The Debtors did not move to extend the automatic stay in this case, *see* 11 U.S.C. § 362(c)(3)(A)-(B), but Transamerica concedes that the automatic stay is in effect as to property of the bankruptcy estate. (Doc. 24).

-4-

Transamerica is not entitled to adequate protection, and that the distributions are neither burdensome nor inconsequential to the bankruptcy estate. (Doc. 49). The Court scheduled an evidentiary hearing on Transamerica's motion for July 25, 2016. (Doc. 58).

On July 5, 2016, DePaola and Transamerica filed a joint motion to approve compromise. (Doc. 86). Under the proposed compromise, DePaola and Transamerica would each receive half of the distribution due John Scott from Mallett's probate estate, and DePaola would abandon any interest in Allene's probate estate. (Doc. 86). The motion advises that there is $108,197.32 in Mallett's probate estate that is ripe for distribution in equal shares to Emily, Christi, and John Scott. (Doc. 86). Three days later, this Court, acting *sua sponte*, expressed skepticism that Transamerica has a secured claim and suggested that the compromise should be disallowed. (Doc. 92). The Court instructed the parties to explain at the July 25 evidentiary hearing why the compromise should be approved; *i.e.*, "that there is reason to believe Transamerica's claim is superior to [DePaola]'s interest in the estates of [John Scott]'s parents." (Doc. 92).

At the July 25 hearing counsel for DePaola explained that Allene's probate estate had three parcels of real estate in Covington County that were minimal in value, and that John Scott was due approximately $35,000 from Mallett's probate estate. It is her position that the compromise should be approved because even if the Court sustains her objection to the motion for relief, she will still have to litigate an adversary proceeding to determine the extent of Transamerica's lien and will have to litigate the claim Transamerica filed in probate court. DePaola also expressed concern regarding the effect of the Circuit Court's order to the personal representative of Allene's probate estate to pay John Scott's share of the distributions to

-5-

Transamerica. For its part, Transamerica supports the compromise and argues that the Court lacks the power to exercise jurisdiction over the distributions under the probate exception. It also argued that under the equities of the case it should be entitled to recover insurance benefits that it had to pay twice.

## II. ANALYSIS

### A. Jurisdiction & Bankruptcy Court Authority

The Court has jurisdiction over the Debtors' bankruptcy case and the pending motions pursuant to 28 U.S.C. §§ 1334(a) and 157(b), and the District Court's General Order of Reference dated April 25, 1985. The motion to approve compromise is a core proceeding under 28 U.S.C. § 157(b)(2)(A), and the underlying motion for relief from the automatic stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G). The Court "may issue any order . . . that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, which can include, "sua sponte, taking any action or making any determination necessary or appropriate . . . to prevent an abuse of process." 11 U.S.C. § 105(a). That includes the discretion to disallow a compromise that is not in the best interest of the bankruptcy estate.

### B. The Probate Exception to Federal Jurisdiction

The Court will first consider Transamerica's argument that the Court lacks authority to issue any orders with respect to the distributions in Mallett's and Allene's probate estates on the grounds that they fall within the probate exception to federal subject-matter jurisdiction. A creation of common law, "the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts
-6-

from endeavoring to dispose of property that is in the custody of a state probate court." Marshall v. Marshall, 547 U.S. 293, 311-12 (2006); *see, e.g.*, Sutton v. English, 246 U.S. 199, 208 (1918) (holding that a federal court lacked diversity jurisdiction over a proceeding that involved an attempted annulment of a will). However, while a federal court cannot directly probate a will, the exception is narrow and does not preclude federal courts from hearing "suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings. . . ."[4] Markham v. Allen, 326 U.S. 490, 494 (1946) (internal quotation marks omitted). Similarly, while a federal court may not disturb a state court's possession over property, it may "adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." Id.

Although the distributions due John Scott remain in the possession of the probate court (or at least the Circuit Court), Transamerica's reliance on the probate exception does not withstand scrutiny. In Markham, the alien property custodian[5] filed suit in federal district court

---

[4] The Supreme Court later clarified that the phrase "does not interfere with probate proceedings" in Markham is a "reiteration of the general principal that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." Marshall, 547 U.S. at 311.

[5] The Trading with the Enemy Act, 50 U.S.C. App. § 6, "authorizes the President to appoint an official known as the 'alien property custodian,' who is responsible for receiving, holding, administering, and accounting for all money and property in the United States, due or belonging to an enemy, or ally of enemy. The Act was originally enacted during World War I to permit, under careful safeguards and restrictions, certain kinds of business to be carried on among warring nations, and to provide for the care and administration of the property and property rights of enemies and their allies in this country pending the war." Marshall, 547 U.S. at 309 n.4 (internal quotation marks, brackets, and ellipses omitted). The alien property

-7-

on behalf of German legatees of decedent Alvina Wagner, whose estate was being administered in state court, and sought a determination that he was entitled to her entire estate after payment of administration expenses, debts, and taxes. Id. at 492. Reversing the Ninth Circuit's holding that the district court lacked jurisdiction because of the probate exception, the Supreme Court explained that the alien property custodian's suit fell outside the probate exception because it only sought to require the executor of Ms. Wagner's estate to distribute the estate assets to the alien property custodian; in other words, it "le[ft] undisturbed the orderly administration of [Ms. Wagner]'s estate in the state probate court and . . . decree[d the alien property custodian]'s right in the property to be distributed after its administration." Id. at 495. The Court explained that this "[wa]s not an exercise of probate jurisdiction or an interference with property in the possession or custody of a state court." Id.

As Chapter 7 Trustee of the Debtors' bankruptcy estate, DePaola stands in much the same position as the alien property custodian in Markham. Possibly subject to a secured claim of Transamerica, discussed *infra*, John Scott's share of the distributions is property of the bankruptcy estate that DePaola has a claim to on behalf of unsecured creditors. See 11 U.S.C. § 541(a). A determination of her right to the distributions versus Transamerica's right will not wrest possession of the distributions from the state probate court or interfere with the administration of Mallett's and Allene's estates. Therefore, the probate exception to federal jurisdiction is inapplicable.

---

custodian in Markham asserted federal jurisdiction pursuant to what is now 28 U.S.C. § 1345, which vests the district courts with "original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

-8-

Case 16-30141    Doc 114    Filed 08/15/16    Entered 08/15/16 11:15:10    Desc Main
Document    Page 8 of 15

### C. Property of the Bankruptcy Estate & the Automatic Stay

The bankruptcy "estate is comprised of all the following property, wherever located and by whomever held:

> (1) [A]ll legal or equitable interests of the debtor in property as of the commencement of the case.
>
> . . .
>
> (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date –
>
> (A) by bequest, devise, or inheritance[.]"

11 U.S.C. § 541(a). Under Alabama law, "'[t]he expectancy of the heir apparent of a living person, or that of a person named as legatee under the will of a living person, is not a property interest; but an interest created by the will of a person who has died is a property interest even [if] it is contingent.'" Bowden v. Teague, 159 So. 2d 844, 848 (Ala. 1963) (quoting 1 Scott on Trusts, § 85). Similarly, the Seventh Circuit has held that the phrase "becomes entitled to acquire" in § 541(a)(5)(A) means when the testator dies. Matter of Chenoweth, 3 F.3d 1111, 1112 (7th Cir. 1993). At that point the beneficiary has an entitlement that can be captured as property of a bankruptcy estate if the beneficiary has filed or will file bankruptcy. Mallett and Allene both died pre-petition, so John Scott had a property interest in their probate estates. The distributions are property of the Debtors' bankruptcy estate, potentially subject to a secured claim of Transamerica.

The automatic stay in bankruptcy prohibits any entity from enforcing a lien or pre-petition judgment against, or acting to obtain possession of or exercise control over, property of the

bankruptcy estate. 11 U.S.C. §§ 362(a)(2)-(4). A secured creditor may obtain relief from the automatic stay to pursue property of the bankruptcy estate if the creditor lacks adequate protection in its collateral, 11 U.S.C. § 362(d)(1), or if the debtors lacks equity in collateral that is not necessary to an effective reorganization, 11 U.S.C. § 362(d)(2). However, an unsecured creditor is not entitled to relief from the automatic stay to pursue property of the bankruptcy estate. Alternatively, the Court may, at the request of a party in interest, "order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b). John Scott's share of the distributions from the probate estates, amounting to roughly $35,000, is not facially inconsequential in value, but would be rendered inconsequential to the bankruptcy estate if Transamerica's claim to the distributions is superior to DePaola's claim. Therefore, Transamerica's entitlement to relief under any of these avenues hinges on whether it is a secured creditor with a property interest in the probate distributions. As the party seeking relief Transamerica "has the burden of proof on the issue of the debtor's equity in property[,]" 11 U.S.C. § 362(g)(1), meaning that it has the burden of proving that its claim is secured by the probate distributions at the expense of John Scott's equity in them.

### D. Judgment Lien Attachment

At this time, the only evidence the Court has supporting Transamerica's assertion of a secured claim in the probate distributions is its $210,000 judgment lien against John Scott. The Bankruptcy Code broadly defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). However, the scope of that interest is defined by state law. In re Vance, 538 B.R. 862, 865 (Bankr. M.D. Ala. 2011).

-10-

"Every judgment, a certificate of which has been filed . . . shall be a lien in the county where filed on all property of the defendant which is subject to levy and sale under execution[.]" ALA. CODE § 6-9-211.[6] If property is not subject to levy and sale under execution, a judgment lien cannot attach to it. Vance, 538 B.R. at 865. Executions may be levied "[o]n personal property of the defendant, except things in action[.]" ALA. CODE § 6-9-40(2). The Alabama Supreme Court defines a "thing in action" as "a right to demand money or property by an action" and "there can in the nature of things be no present possession of a thing which lies merely in action." Peavy Lumber Co. v. O.E. Murchison, 130 So. 2d 338, 340-41 (Ala. 1961). In other words, a judgment lien cannot attach to a mere right to demand money or property by an action.

This Court held in Vance that a judgment lien does not attach to a bank account because an account is nothing more than a debtor-creditor relationship out of which arises a right to demand money. Vance, 538 B.R. at 866. Other examples of things in action have included (1) money due under a contract, (2) damages arising from a breach of contract, (3) a check, (4) an interest in a pension and profit-sharing plan, (5) the right to receive payment under an insurance contract and the proceeds from the policy, and (6) intangible personal property such as instruments and securities for the payment of money. Id.; *see also* In re Head, 204 B.R. 1022, 1025 (Bankr. N.D. Ala. 1997)).

---

[6] Section 6-9-211 also provides that "[n]o insolvency proceedings or declaration of insolvency shall affect or impair such lien, except bankruptcy proceedings instituted within four months after the filing of the certificate of judgment for record as provided by law." ALA. CODE § 6-9-211. Transamerica's judgment lien was recorded on October 1, 2015, within four months of the commencement of this bankruptcy case. However, "bankruptcy *vel non* does not destroy lien rights, particularly judgment lien rights, and . . . they subsist after bankruptcy." Memory v. Jefferson Fed. Savs. & Loan Assoc. (In re Fair), 28 B.R. 160, 163 (Bankr. M.D. Ala. 1983) (citing Rowe v. Bonneau-Jeter Hardware Co., 16 So. 2d 689 (Ala. 1944)). Therefore, § 6-9-211's four-month impairment language does not invalidate Transamerica's judgment lien.

In light of those examples, the Court concludes that the probate distributions are likewise things in action that are not subject to levy and sale by execution. The money is still in the probate court's possession and is subject to Transamerica's demand, making the distributions analogous to the things in action listed in Head and Vance. Therefore, under Alabama law Transamerica's judgment lien does not attach to the distributions.

### E. The Motion to Approve Compromise

"On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). In determining whether to approve the compromise, the Court must weigh the terms of the compromise against the strength of the parties' respective legal positions in Transamerica's motion for relief, as well as the potential cost to the bankruptcy estate of litigating its position. The Eleventh Circuit has set out the following four factors to consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Chira v. Saal (In re Chira), 567 F.3d 1307, 1312 (11th Cir. 2009); Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.), 898 F.2d 1544, 1549 (11th Cir. 1990).

Transamerica's judgment lien does not attach to the probate distributions and nothing else has been presented to the Court that would suggest that Transamerica's claim is secured by the distributions. At this point Transamerica appears to be an unsecured creditor with a non-priority

Case 16-30141    Doc 114    Filed 08/15/16    Entered 08/15/16 11:15:10    Desc Main
Document      Page 12 of 15

claim, like any other unsecured creditor, and does not appear to be entitled to relief from the automatic stay.

Based on this evidence, the proposed compromise would effectively give away half of the bankruptcy estate's share in the probate distributions to Transamerica at the expense of other creditors. Put another way, the compromise would allow Transamerica to jump to the front of the line when it is not entitled to be there. Counsel for DePaola justified the compromise as a means of avoiding litigation expenses and cited the claim Transamerica filed in Mallett's probate case. The Court acknowledges that an adversary proceeding may be necessary to determine the extent of Transamerica's lien,[7] but unless Transamerica has something other than its judgment lien to support its interest in the distributions the adversary proceeding would be a mere formality. *Supra* Part II(D). The claims Transamerica filed in probate court are subject to the automatic stay, *see* 11 U.S.C. § 362(c)(1), and should now be resolved in bankruptcy, not probate. "The . . . court in which a case under [the Bankruptcy Code] is commenced or is pending shall have *exclusive jurisdiction* . . . of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate[.]" 28 U.S.C. § 1334(e)(1) (emphasis added). "[T]he Court has jurisdiction under § 1334(e)(1) to decide who will get paid from" property of the estate, not a state probate court. Liberty Bank & Trust Co. v. Danley (In re Danley), --- B.R. ----, 2016 WL 3680068, *5 (Bankr. M.D. Ala. Jul. 11, 2016). Finally, if a creditor can intimidate a bankruptcy trustee into surrendering a superior interest in property of the bankruptcy estate by the mere threat of litigation, the result would be the denial of justice, the

---

[7] "[A] proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under [Bankruptcy] Rule 4003(d)[,]" is an adversary proceeding. FED. R. BANKR. P. 7001(2).

-13-

injury of other creditors, and potentially the collapse of the bankruptcy priority and distribution scheme. The Court finds no merit in DePaola's arguments in support of the compromise.

The Court is sympathetic to Transamerica's plight. It appears that Transamerica was forced to pay insurance benefits twice because of John Scott's malfeasance. The Court is compelled to point out, however, that Transamerica's pain is largely self-inflicted. By its own admission John Scott's fraudulent representation of Mallett's estate failed to deceive Transamerica, yet it mailed John Scott the proceeds anyway and committed conversion in doing so. The Court notes that this bankruptcy case has spawned two adversary proceedings in which the plaintiffs assert that John Scott defrauded them.[8] If their allegations are true, they are innocent victims and equity suggests that they have a stronger claim to the distributions than Transamerica.

Finally, the Court acknowledges that it should recognize and give effect to the Circuit Court's order to the personal representative of Allene's probate estate under considerations of comity. DePaola may abandon the bankruptcy estate's interest in John Scott's share of the distributions from Allene's probate estate to Transamerica. However, the Circuit Court's order does not apply to Mallett's probate estate. The Court can oversee the distribution of John Scott's share of Mallett's probate estate without stepping on the Circuit Court's toes.

### III. CONCLUSION

Chapter 7 Trustee Susan DePaola and creditor Transamerica Advisors Life Insurance Company have proposed a compromise of their competing claims to the probate estate of Mallett

---

[8] *Brown v. Hooper*, case number 16-03066; *Parks v. Hooper*, case number 16-03067.

-14-

Scott Hooper, the deceased father of Debtor John Scott Hooper, by equally dividing between them the distribution due to the bankruptcy estate.  Because the judgment lien held by Transamerica does not attach to the probate estate, Transamerica appears to be an unsecured creditor.  The Court concludes that the proposed compromise would harm the bankruptcy estate.  Therefore, the joint motion to approve compromise filed by DePaola and Transamerica is DENIED.

Done this 15th day of August, 2016.

United States Bankruptcy Judge

c: John D. Norris, Attorney for Debtor
   Max C. Pope Jr., Attorney for Trustee
   Walter F. McArdle, Attorney for Transamerica
   Susan S. DePaola, Trustee
   John Peek, Attorney for Personal Representatives